# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STANTON PEARSON,<br>      Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON FKA<br>THE BANK OF NEW YORK AS TRUSTEE FOR<br>CERTIFICATE HOLDERS OF CWABS, INC.<br>ASSET-BACKED CERTIFICATES 2005-7 and<br>GREEN TREE SERVICING LLC,<br>      Defendants. | CIVIL ACTION<br>No. 14-12359-TSH |

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS (Docket No. 11) and PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 13)
**August 4, 2014**

**HILLMAN, D.J.**

### Background

Stanton Pearson, Jr. ("Pearson") filed a Verified Complaint (Docket No. 6, at pp. 11-18)("Complaint") against The Bank of New York Mellon fka The Bank of New York as Trustee for Certificate holders of CWABS, Inc. Asset-Backed Certificates, 2005-07 ("BNY") and Green Tree Servicing LLC ("Green Tree") alleging claims for: Breach of Contract/Promissory Estoppel (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A ("Chapter 93A")(Count III) [1], negligent infliction of emotional distress (Count V), and failure to comply with Mass.Gen. L. ch.

---
[1] At the hearing held on the Defendants' motion to dismiss and Plaintiff's motion for preliminary injunction, Plaintiff conceded that his Chapter 93A claim should be dismissed.

244 § 35A(Count VI). Pearson also seeks an accounting regarding the outstanding loan (Count IV) and injunctive relief (Count VII).

This Order addresses Defendants' Motion To Dismiss (Docket No. 11) and Plaintiff's Motion For Preliminary Injunction (Docket No. 13). For the reasons set forth below, the motion to dismiss is *granted,* in part, and *denied*, in part. The motion for preliminary injunction is *denied*.[2]

## Facts

The Defendants hold a mortgage on Pearson's property located at 23 Greenbriar Drive in Shrewsbury, Massachusetts (the "Property"). The mortgage, which is dated June 27, 2005, was assigned to the Defendants by Bank of America ("BOA"), as successor to the original mortgagee, Countrywide Home Loans ("Countrywide"). The mortgage secures a promissory note signed by Pearson in favor of Countrywide[3] in the original loan amount of $368,000. *Complaint*, at ¶¶1,4. *See also Opposition To Motion For Preliminary Injunction* (Docket No. 25)(*"Defendants' Opposition"*), at *Exs. A&B*.

Sometime in 2008, Pearson applied to BOA for a loan modification. BOA sent Pearson a loan modification package which provided that the interest rate on the note would be set at 6.125% for five years. BOA requested that Pearson execute the loan modification agreement ("Modification Agreement") and return it by overnight mail, which he did. *Id.,* at ¶5.

---

[2] The Defendants agreed at the hearing that the foreclosure of the Property, which was scheduled for July 21, 2014, would be stayed pending the issuance of this Order.
[3] BOA purchased Countrywide sometime in 2008. For ease of reference, rather then differentiate between actions allegedly taken by Countrywide or BOA, the Court will hereinafter simply refer to these entities collectively as "BOA."

2

The Modification Agreement provided:

IMPORTANT TERMS

….

Remember to include copies of your paychecks or bank statements along with your loan modification documents…
Please note that this offer is contingent upon verification of your income. Even if you sign and return the loan modification documents; *this modification will not take effect if we are not able to verify your income.*

….

TO ACCEPT THE ENCLOSED MODIFICATION, HERE'S WHAT YOU NEED TO DO

….

2) Sign and date the enclosed modification document in the presence of a notary[]
The notary acknowledgement must be in recordable form … .

3) Include the following information with your signed and notarized modification agreement:
- Copies of two recent (within the past 60 days) paystubs for each income earner, or
- If you are self-employed, copies of your past three bank statements.

*Complaint*, at *Ex. A* (emphasis in original). Pearson returned a notarized, signed copy of the Modification Agreement to BOA. However, he did not provide copies of paychecks or bank statements. *Id.*[4]

---

[4] Attached as *Exhibit A* to the Complaint are copies of what Pearson represents to be the documentation he returned to BOA, which consists solely of a copy of the Modification Agreement signed by him on January 12, 2009. Since Pearson has incorporated these materials into the Complaint by reference, the Court can infer that he did not include the requisite copies of his paychecks and/or bank statements. Additionally, while it has not been raised by the Defendants in connection with the pending motions, it may become relevant in future proceedings: the Modification Agreement was required to be notarized in recordable form-- it is doubtful, for a variety of reasons, that the notary form which Pearson included with the Modification Agreement meets this requirement. Finally, while Pearson avers that *Exhibit A* includes "proof of delivery", all that is included is a receipt from Federal Express that shows he dropped off *a* package on January 12, 2009—the receipt does not indicate to whom the package was sent or that it was received. For purposes of this Order, I have assumed that the Modification Agreement was properly notarized and was received by BOA.

BOA never sent Pearson a fully executed copy of the Modification Agreement and the subsequent loan statements and BOA correspondence to Pearson reflected the terms of the original loan. In 2009, BOA sent Pearson new paperwork asking that he apply for a new loan modification. *Id.*, at ¶¶ 6,7. Pearson continued to contact BOA to clear up the discrepancy. On July 13, 2010, Pearson sent BOA a letter requesting a copy of the fully executed Modification Agreement. An unidentified representative of BOA told Pearson over the phone that he should not make payments until the loan modification was activated in the computer system. *Id.*, at ¶¶8,9. On August 8, 2012, BOA sent Pearson a letter stating that it had recently contacted him regarding a loan modification and he had elected not to accept it. *Id.*, at ¶12. On or about May 20, 2014, Pearson received notice from the Defendants of their intention to foreclose on the Property on or after June 5, 2014. *Id.*, at ¶13.

Green Tree's records reflect that the last payment which Pearson made on the loan was July 21, 2008, for $3,455.22. *See Defendants' Opposition*, at *Ex. D.* Pearson acknowledged at the hearing that he has not made a single payment on the mortgage in six years. He further acknowledged that he has not put any money in escrow to cover missed payments. He did represent to the Court that he would make a payment of $3,000 into an escrow account by July 21, 2014.[5]

## Discussion

### *Motion To Dismiss For Failure To State A Claim*

The Defendants seek to dismiss Pearson's contract claim and claim for negligent infliction of emotional distress on the grounds that all of the relevant factual allegations to support his claims are made against BOA—he has not identified any wrongful conduct by either BNY or Green Tree. Furthermore, Defendants contend that: Counts IV ("Accounting") and VII

---

[5] In light of the Court's rulings, any such payment made by Pearson shall be returned to him forthwith.

("Injunctive Relief") should be dismissed because they do not set forth legal claims, and Count VI (Failure to comply with Mass.Gen. L., ch. 244 §35A) should be dismissed for failure to state a claim. In the alternative, Defendants argue that the claims fail as a matter of law because: (1) neither Defendant was a party to the Modification Agreement or took part in the negotiations and therefore, could not have breached the contract, violated the covenant of good faith and fair dealing, or made any representations on which Pearson could have relied to his detriment; (2) Pearson is not entitled to an accounting as an equitable remedy because there is no fiduciary relationship between he and the Defendants and Pearson has failed to allege that any Defendant breached a fiduciary duty to him; (3) Pearson has not alleged that any Defendant was negligent or identified any conduct of any Defendant that caused him emotional harm and, in any event, a lender does not owe a duty of care to a borrower; and (4) Pearson does not allege any factual allegations to support his claim that the Defendants failed to provide notice of his right to cure before accelerating the debt, the single sentence conclusory allegation is insufficient to state a claim for relief, and violation of the statute is not grounds to void a foreclosure.

*Standard of Review*

On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

*Claims For Negligent Infliction Emotional Distress, Accounting, and Injunctive Relief*

I will first address those claims which can be dealt with in summary fashion. Pearson's claim for negligent infliction of emotional distress fails on a number of grounds. First, he has not alleged any facts to support such a claim against either Defendant. Even if he had, BNY is correct that a lender does not a general duty of care to a borrower and therefore, neither these Defendants nor BOA would be liable to Pearson for negligent infliction of emotional distress. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495 (1st Cir. 2013)(dismissing negligence claim); *Corcoran v. Saxon Mortg. Services, Inc.*, Civ. Act. No. 09-11468-NMG, 2010 WL 2106170 (D.Mass. May 24, 2010)(dismissing claim for negligent infliction of emotional distress). To state a cause of action for "accounting," plaintiff must establish that there was a fiduciary relationship between the parties. Pearson simply demands an accounting of the loan without alleging any elements of such a claim, including that a fiduciary relationship exists between the parties. Accordingly, Defendants' motion to dismiss is allowed as to this claim. *See Giordano v. Giordano,* No. 12-P-408 (Mass.App.Ct. Aug. 6, 2003)(unpublished disposition)(citing *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts,* 79 Mass.App.Ct. 473, 489 (2011), *reversed on other grounds,* 460 Mass. 50 (2012)(fiduciary relationship between

parties is essential element of accounting claim)). Finally, "injunctive relief" is not an independent cause of action therefore, Defendants' motion to dismiss Count VII is allowed. *See Payton v. Wells Fargo Bank, N.A.*, Civ. Act. No. 12-11540-DJC, 2013 WL 782601 at *6 (D.Mass. Feb. 28, 2013) and cases cited therein.

*Claims For Breach Of Contract and Breach Of The Covenant Of Good Faith And Fair Dealing*

Defendants argue that Pearson fails to state a claim for breach of contract and claim for breach of the covenant of good faith and fair dealing because the alleged breaches were committed by BOA, who is not a party to this case. Defendants further argue that assuming that the loan modification was binding on them, by its terms it would have expired after five years, which is before the foreclosure proceedings were initiated.

Defendants assert that the breach of contract claim fails because neither was a party to the agreement which was allegedly breached, *i.e.*, the loan modification. Assuming for purposes of this discussion only, that there was a valid modification of the loan agreement, it is at least plausible that one or both of the Defendants, as assignees, could be found liable for breach of the agreement by their predecessor, BOA.[6] For that reason, I am denying the motion to dismiss on the breach of contract claim.

Pearson's claim for breach of the covenant of good faith and fair dealing requires little discussion. "Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. The covenant provides that 'neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract.'

---

[6] "Under Massachusetts law, the essential elements of a contract are 'offer, acceptance and exchange of consideration or meeting of the minds.' In order to satisfy the pleading standards demanded by a motion to dismiss, a claim of breach of contract must plead all the requisite contract elements.'" *Aragao v. Mortgage Electronic Registration Systems, Inc.,* 13-12515-WGY, 2014 WL 2212064, at *4, --- F.Supp.2d.--- (D.Mass. May 29, 2014)(internal citation and citation to quoted case omitted). It is questionable whether the Complaint alleges the essential elements of a contract claim. Nevertheless, the issue of whether the Modification Agreement was a binding contract as between BOA and Pearson was not raised in the context of Defendants' motion to dismiss and therefore, will not be addressed at this time.

7

'[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.'" *A.J. Properties, LLC v. Stanley Black & Decker, Inc.*, 972 F. Supp. 2d 68, 80-81 (D. Mass. 2013)(internals citations and citations to quoted cases omitted). Simply put, all of the allegations in support of this claim are against BOA, that is, Pearson alleges that BOA breached the covenant of good faith and fair dealing by seeking to foreclose against the Property despite his alleged compliance with the terms of its offer to modify the loan agreement. He has not alleged any conduct by either of the Defendants that plausibly suggest that either failed to perform under the terms of any agreement or that *these* Defendants injured his rights under any agreement. Put another way, these Defendants cannot be held liable for the alleged breach of a covenant of an agreement to which they were not a party. For that reason, Defendants' motion to dismiss this claim is allowed.

*Promissory Estoppel*

"Under Massachusetts law, to state a claim for promissory estoppel 'a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'" *MacKenzie v. Flagstar Bank, FSB,* 738 F.3d 486, 496 (1st Cir. 2013)(internal citation and citation to quoted case omitted).

The sum total of Pearson's allegations as to his promissory estoppel claim is as follows: "[t]o the extent there was not [sic] contract formation, the *Defendant's* actions induced Plaintiff's reasonable reliance on Bank of America's representations." *Complaint*, at ¶ 17(emphasis added). In the Complaint, Pearson defines "Defendant" to be a collective reference to BNY and Green Tree. In *MacKenzie*, the First Circuit upheld the lower court's dismissal of

the mortgagor's promissory estoppel claim on the grounds that the plaintiff had alleged "the elements of a promissory estoppel claim, but had 'fail[ed] to articulate the facts to support th[ose] elements.' Specifically, 'Plaintiffs fail[ed] to identify the particular promise that they relied upon and the manner in which such reliance was to their detriment.' " *Id.* (district court correct that complaint allegations are textbook illustration of the type of "formulaic recitation of the elements of a cause of action" that are insufficient to survive motion to dismiss). In this case, not only does Pearson fail to allege any facts to support his promissory estoppel claim against these Defendants, he has failed to plead the necessary elements of such a claim.

Even if I were to consider Pearson's argument at the hearing that these Defendants could be liable under a promissory estoppel theory for BOA's allegedly having strung him along regarding the existence of a binding loan modification agreement, he has failed to allege how the BOA's failure to honor the loan modification agreement was detrimental to him. Put another way, he has failed to allege that had BOA honored the Modification Agreement, he would not have defaulted on his mortgage. To the extent that Pearson wants the Court to infer that he alleges that he relied on the oral representation of an unnamed BOA employee that he should not make any payments on the mortgage until the loan modification issue is resolved, his claim fails as a matter of law. According to allegation in the Complaint, the alleged misrepresentation was made sometime in 2010—at that point, he had already failed to make payments under the alleged Modification Agreement for virtually the entirety of 2009. That is, he stopped making mortgage payments before the alleged representation was made. Thus, he cannot establish that he stopped making mortgage payments in reliance on such representation.[7] Finally, Pearson has not alleged

---

[7] Although *Exhibit B* to the Complaint *suggests* that Pearson would have been significantly in arrears on his mortgage payments at the time the BOA employee made the alleged representation, it is not self-evident from the Complaint that such was the case. For that reason, I am not dismissing Pearson's estoppel claim on this ground.

9

any facts which would establish that he suffered a legal detriment—that is, he fails to assert any facts which would establish that had BOA honored the alleged Modification Agreement, he would have been in a position to make the reduced mortgage payments, nor does he allege any other actions that he would have taken which would have allowed him to avoid foreclosure. Accordingly, Defendants' motion to dismiss this claim is allowed. *Accord Id.* (mortgagors have not alleged any facts that would allow court to infer that they would have avoided foreclosure or been better off in any way but for bank's supposed promise to consider them for loan modification).

*Failure to Comply With Mass.Gen.L.Ch. 244 §35A*

Defendants essentially assert that Pearson's claim for failure to comply with Mass.Gen.L. Ch. 244, §35A must be dismissed because the one sentence conclusory statement asserted in the Complaint is insufficient to state a claim. In his opposition, Pearson attempts to bolster his claim by stating the violation of the statute was that he never received a right to cure notice under Mass.Gen.L. ch. 244, ¶35A and that he would file an affidavit to this effect. He never filed such an affidavit (even if he had, it is unlikely the Court would consider it on a motion to dismiss). At the hearing, however, counsel for Pearson suggested that the issue was that the right to cure letter sent by BOA did not give him 150 days to remedy the default, which he states is required by the statute. Although Pearson attached a copy of this letter to the Complaint (*see Ex. B*), he refers to it as a notice of default and makes no reference to it or its contents in connection with his Chapter 244, §35A claim.[8] What the Court is left to consider is that the *only* allegation in the

---

Rather, I simply raise the issue to highlight the difficulties Pearson will face should he contemplate filing a motion to amend this claim.
   [8] At the hearing, counsel referred to the letter as *Exhibit F* to Defendants' Opposition, apparently not realizing that page one of the letter was attached to the Complaint as *Exhibit B*. Before considering whether to pursue this claim on a motion to amend, counsel should review the other submissions included with the Defendants' Opposition. First, Defendants' submissions make clear that the September 29, 2009 letter was not the first notice of intent to foreclose served on Pearson, and therefore, it is unclear that the 150 day right to cure period was

Complaint regarding this claim is as follows: "The Defendant failed to comply with the "Right to Cure" notice set forth under M.G.L. ch 244 § 35A." *Complaint*, at ¶17. There are *no* factual allegations asserted in support of this claim and Pearson's conflicting arguments in his opposition and at the hearing serve only to underscore Defendants' contention that this barebones, conclusory allegation is insufficient to meet *Iqbal's* plausibility standard. I agree with the Defendants and find that Pearson has failed to state a claim. Therefore, his Chapter 244, §35A claim is dismissed.

### *The Motion For Preliminary Injunction*

In evaluating a motion for a preliminary injunction, the Court examines the likelihood the movant will succeed on the merits, that the movant is likely to suffer irreparable harm in the absence preliminary relief, that the balance of equities tips in the movant's favor, and that an injunction is in the public interest. *Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). While all four factors must be weighed, the moving party's likelihood of success on the merits is "the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir.1998). "[I]f the moving party *cannot* demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Maine Educ. Ass'n*, 695 F.3d at 152 (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002)) (emphasis added). The moving party bears the burden of proof for each of these four factors. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

In order to satisfy the first factor, *i.e.,* a likelihood of success on the merits, Pearson must establish that he is likely to prevail on his breach of contract claim (the only surviving cause of

---

applicable. Additionally, if the lender meets certain requirements, the right to cure period may be reduced to less than 150 days. *See Defendants' Opposition,* at *Ex.C;* Mass.Gen.L. Ch. 244, §35A. He should also consider the authority cited by Defendants.

action).  With respect to the preliminary injunction, the Court is not limited to the allegation asserted in the Complaint.  Accordingly, Defendants have presented additional facts supported by exhibits and have supplemented their arguments.  On the preliminary injunction record, it is clear for the reasons set forth below that Pearson cannot establish a likelihood of success on the merits.

In his Complaint and throughout his submissions, Pearson asserts, without reservation, that the parties had entered into a binding loan modification which BOA failed to honor.  In support of this contention, he essentially argues that BOA had approved him for a loan modification and that the loan modification documentation which BOA sent to him constituted an offer-- which then became a binding agreement when he returned a signed, notarized copy of the Modification Agreement to BOA.  However, Pearson's position ignores the unambiguous language of the Modification Agreement and BOA's subsequent conduct.  The Modification Agreement *expressly* provided in two independent provisions that in order for the proposed loan modification to go into effect, Pearson was required to provide BOA with copies of his paychecks and/or bank statements at the time he submitted the signed loan modification documents so that BOA could verify his income.  Pearson has attached to his Complaint a copy of the loan modification package he forwarded to BOA— the package did not include the requisite paychecks and/or bank statements.

Pearson seems to suggest that through his various telephone conversations, he was led to believe that the loan modification was in effect.  The record is to the contrary.  Not only did BOA not provide Pearson a signed copy of the Modification Agreement, it sent him additional requests to apply for a loan modification.  Furthermore, Pearson can't have it both ways—that is, he can't insist that the parties had entered into a binding loan

12

modification when *he never made a single payment at the reduced amount*, *nor did he pay any amount into escrow.* Frankly, given the unambiguous language of the Modification Agreement, *i.e.*, that merely returning a signed copy of the document would *not* create a binding agreement, the Court finds Pearson's continued insistence that he had been approved for a loan modification perplexing.

Under the circumstances, I find that Pearson has failed to establish that he is likely to succeed on the merits of his claim. This essentially ends the inquiry, although for the record, I also find that he has failed to establish irreparable harm, that the equities are in his favor and that public policy favors the issuance of injunctive relief. The motion for preliminary injunction is denied.[9]

## **Future Proceedings**

In connection with the motion for preliminary injunction, Defendants argue that there never was a binding loan modification. For the reasons set forth above, I agree. Because this argument was not fully developed in regards to the motion to dismiss, I find that it would be unfair to dismiss Pearson's breach of contract and related claims on this ground. That being said, the record as it now stands *strongly* suggests that there was no binding loan modification. Furthermore, even if the Court were to find a there was a binding loan modification, it is likely that Pearson's failure to make *any* mortgage payments for six years, including the lower payments required under the alleged loan modification, was a material breach of his obligation to BOA and/or the Defendants. Therefore, a conference shall be scheduled forthwith to set an expedited schedule for the filing of motion(s) for summary judgment. One week prior to the

---

[9] Where a mortgagor has failed to make any payments on the loan for a lengthy period, there are courts that have held that the mortgagor had "unclean hands" and is barred from seeking equitable relief from the Court in the form of a preliminary injunction. *See Durmic v. J.P. Morgan Chase Bank, N.A.*, Civ.Act. No. 10-10380-RGS, 2010 WL 4825632, at *7 (D.Mass. Nov. 24, 2010).

13

conference, the parties shall submit a joint statement to the Court which includes their respective proposals for the scheduling of limited discovery and filing of summary judgment motion(s) and briefs.

## **Conclusion**

1. Defendants' Motion To Dismiss (Docket No. 11) is *allowed, in part* and *denied, in part,* as provided in this Order; and

2. Plaintiff's Motion For Preliminary Injunction (Docket No. 13) is *denied*.

The Court's stay of the foreclosure previously scheduled for July 21, 2014 is lifted and Defendants are free to institute new foreclosure proceedings.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE